## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

TEDERRIA L. PURYEAR,
        Plaintiff,

v.                                    No:   3:05cv81/RV/MD

JO ANNE B. BARNHART,
Commissioner of Social Security,
        Defendant.

---

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Puryear's application for disability insurance benefits under Title II of the Act.  Plaintiff and defendant have filed their memoranda in support of their respective positions on appeal (docs. 7, 11).   Also pending is plaintiff's motion for remand (doc. 12), to which defendant has responded (doc. 13).  Although the motion for remand, if granted, would obviate the necessity for a discussion of the merits, the reports upon which the motion is based are tied into the record as a whole.  And because the court's ultimate recommendation is that remand should not be granted in view of the entire record, the merits of the appeal will be discussed first.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits claiming a disability onset date of December 17, 2001.  The application was denied initially and on reconsideration and plaintiff requested a hearing before an Administrative Law Judge (ALJ).  A hearing was held on June 9, 2004 at which the plaintiff was represented by counsel and testified.  A vocational expert also testified.  The ALJ rendered an unfavorable decision on August 26, 2004 (Tr. 17-25) and the Appeals Council declined review (Tr. 5-8), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court.  *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).  This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff had not engaged in substantial gainful activity since his onset date; that he had severe impairments of status-post right and left rotator cuff repairs, and pain disorder, but that these impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; that the claimant's allegations concerning his limitations were not totally credible; that the plaintiff had the residual functional capacity to perform light work with certain limitations; that he was unable to perform his past relevant work as a corrections officer; that he was a younger individual with more than a high school education; that he had no transferrable skills from his past work; that considering his age, experience, work experience and

physical limitations, he could be expected to make a vocational adjustment to work that exists in significant numbers in the national economy; and that he was not under a disability as defined in the Act.

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence. *Falge, supra.* The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted). Findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps.  A finding of disability or no disability at any step renders further evaluation unnecessary.  The steps are:

1.   Is the individual currently engaged in substantial gainful activity?

2.   Does the individual have any severe impairment?

3.   Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.   Does the individual have any impairments which prevent past relevant work?

5.   Do the individual's impairments prevent any other work?

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner.  *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

The medical record begins with an entry dated May 5, 1993 when plaintiff saw Robert D. Flurry, M.D., a family practitioner, complaining of a migraine headache (Tr. 142).  Over the next year plaintiff saw Dr. Flurry for low back pain, high blood pressure, respiratory problems and a sprain in his thumb (Tr. 139-141).  Then, on

June 17, 1995, plaintiff, who worked as a corrections officer, suffered an injury to his left shoulder in a work-related incident involving an altercation with a prisoner.  Dr. Flurry obtained x-rays which showed only some degeneration in the shoulder (Tr. 150).  Although the problem seemed to be resolving within a few weeks, it did not fully heal, and Dr. Flurry recommended that plaintiff have an orthopedic evaluation (Tr. 138).

Plaintiff therefore began seeing William E. Smith, Jr., M.D., an orthopedic surgeon, on July 20, 1995 (Tr. 237).  Dr. Smith suspected a possible rotator cuff tear and an MRI confirmed it (Tr. 237).  He therefore performed surgery on August 18, 1995 and continued to see the plaintiff in follow-up over the next year.  During that time plaintiff complained of some pain in his right shoulder (Tr. 234) but Dr. Smith's attention was directed primarily to the left shoulder.  By January 29, 1996, Dr. Smith felt that plaintiff would reach maximum medical improvement within a month, and that as to his left shoulder, he had a 15% impairment, or nine percent of the whole person.  Plaintiff would be expected to return to full duty by March 1, 1996 (Tr. 233).  On February 26, 1996, Dr. Smith felt that plaintiff needed a little more time because he lacked sufficient strength in his right arm and changed his return to work date to April 1, 1996 (Tr. 233).  On April 1, 1996, Dr. Smith indicated that plaintiff could return to light duty (Tr. 232), and on July 29, 1996, Dr. Smith indicated that plaintiff still had some deficit in rotation of the shoulder but that he was as strong as most people doing his job despite his injury, and certainly had adequate strength for self defense.  Dr. Smith revised his disability rating downward from nine percent to seven percent of the whole body with maximum medical improvement as of July 29, 1996 (Tr. 230).

Over the next five years plaintiff continued to work.  He also worked out at the YMCA under a physician's prescription to keep his strength up but his condition was essentially unchanged.  Thus, by June 26, 2000, Dr. Smith indicated that plaintiff's condition was "as before" and he should continue on full duty (Tr. 228).  A year later,

on June 11, 2001, plaintiff's right shoulder became more of a problem and Dr. Smith felt that he probably needed surgery, but that he was otherwise unchanged and could continue to work (Tr. 227).  By December 3, 2001, plaintiff's complaints of pain in his right shoulder were unremitting (Tr. 226-227) and on December 17, 2001, Dr. Smith performed surgery on that shoulder (Tr. 266).  In follow-up, plaintiff had physical therapy and on February 25, 2002, Dr. Smith indicated that plaintiff's right shoulder was approaching normal range of motion but that he still had pain, that he could not do any physical restraint on the job and would be on clerical duty for another six weeks (Tr. 224).  On April 8, 2002, plaintiff continued to have difficulty in his right shoulder and Dr. Randy Banks, who was Dr. Smith's partner, indicated that a functional capacity evaluation (FCE) was probably indicated and that he would discuss this with Dr. Smith (Tr. 223).

The FCE was done, and on May 6, 2002, Dr. Smith indicated that he agreed with the FCE results which showed plaintiff capable of doing work at the medium level, but that he could not do physical restraint on adolescent prisoners.  Dr. Smith gave a seven percent impairment of the whole body due to loss of motion, pain and permanent rotator cuff injury on the right and felt that plaintiff could not do anything beyond what the FCE recommended, which was medium level activity without significant physical restraint activity (Tr. 222).  On September 5, 2002, an arthrogram of the right shoulder disclosed status-post rotator cuff repair on the right with the suggestion of post-surgical changes and tendinosis.  The radiologist also indicated that the examination was somewhat compromised by technical factors (Tr. 158-159).

Plaintiff saw Dr. Smith intermittently over the next year and by April 21, 2003, Dr. Smith noted that plaintiff had lost a good deal of musculature in both his upper and lower extremities on the left and that his right shoulder was profoundly crepitant with positive impingement.  His assessment was recurrent right rotator cuff tear and he recommended arthroscopy.  He further indicated that he did not agree with

medium duty any longer and stated "I do not think he is capable of working at this time." (Tr. 215).  On July 28, 2003, plaintiff's condition was essentially unchanged and Dr. Smith urged the plaintiff to give serious consideration to another surgery in the right shoulder (Tr. 214).  On December 5, 2003, Dr. Smith noted pain in both shoulders, greater on the right and again felt that there was probably recurrent rotator cuff tear on the right.  He recommended injection with steroids in both shoulders and that plaintiff have surgery after the first of the year.  He also noted that plaintiff was "unable to work." (Tr. 248)

Because plaintiff was a state employee, Dr. Smith was asked to fill out a disability determination form for the Florida Retirement System.  That form was dated February 12, 2004, and where Dr. Smith was asked to note physical and/or mental impairments, he checked "moderate limitation of functional capacity; capable of sedentary work," and "cannot perform present work, but capable of performing another line of work."  (Tr. 254-255)

On May 13, 2004 Dr. Smith injected plaintiff's shoulders (Tr. 249), and on September 9, 2004 Dr. Smith filled out a Clinical Assessment of Pain form in which he opined that plaintiff's pain was present to such an extent as to be distracting to adequate performance of daily activities or work, that physical activity of the shoulders, particularly overhead, would be detrimental but that plaintiff's medication would have no side effects (Tr. 308-309).  The administrative record discloses no further treatment by Dr. Smith.

Plaintiff has now submitted a copy of a more recent Florida Retirement System Physician's Report in which Dr. Smith opined that plaintiff had "severe limitation of functional capacity; permanently incapable of any kind of work; totally and permanently disabled from gainful employment." (Doc, 12-2)  Plaintiff's counsel also submitted a letter from Dr. Smith addressed to "To Whom It May Concern" in which Dr. Smith stated that plaintiff was permanently disabled at the time of his separation

from his job at the Escambia County Juvenile Detention Center, as of August 26, 2002 (*id*.)  Plaintiff bases his motion for remand in part on this evidence.  The motion will be discussed more fully below.

During the long course of plaintiff's treatment, he continued to see Dr. Flurry for his general medical condition, and although Dr. Flurry made no particular notes about plaintiff's shoulder problems, plaintiff has now also provided a Florida Retirement System Physician's Report signed by Dr. Flurry and dated August 22, 2005.  Like Dr. Smith, he opined that plaintiff had severe limitations of functional capacity, was permanently incapable of any kind of work, and was totally and permanently disabled from gainful employment. (*id.*)  Dr. Flurry also signed a letter, identical to the one signed by Dr. Smith in which he indicated that plaintiff was permanently disabled at the time of his separation from the Juvenile Detention Center on August 26, 2002.  This evidence will also be discussed with respect to plaintiff's motion for remand, below.

Because plaintiff became depressed during the course of his physical problems, he began seeing a psychiatrist, Jordan C. Iserman, M.D.  Dr. Iserman treated plaintiff from October 3, 2002 through January 13, 2004.  His working diagnosis throughout was pain disorder associated with psychological factors and a general medical condition.  He was treated with various medications, including Bextra, Ultram, and Busbar.  On March 5, 2003, Dr. Iserman noted that plaintiff was improving, that he had reached maximum medical impairment, and stated "I do not believe that the level of psychiatric dysfunction is sufficient to preclude his return to the job market or that specific restrictions would apply," although it would be prudent to minimize stress in the work environment (Tr. 180).  On June 30, 2003, Dr. Iserman confirmed a three percent of the whole person impairment and stated that from a psychiatric perspective, his impairment was not sufficient to preclude his return to the job market, although stress should be minimized (Tr. 175).

On August 25, 2003, Dr. Iserman filled out a supplemental questionnaire and indicated that restriction on plaintiff's activities of daily living was slight, maintaining social functioning was moderate, deficiencies in concentration, persistence or pace was often, episodes of deterioration was moderate, and that in a routine work setting his ability to understand, carry out and remember instructions and perform simple tasks was mild while his ability to respond appropriately to supervision, work with co-workers and perform repetitive tasks was moderately impaired (Tr. 250-251). When Dr. Iserman last saw plaintiff, on January 13, 2004, his diagnostic impression was still pain disorder associated with psychological factors and a general medical condition which he noted to be stable.

## DISCUSSION

The plaintiff argues that the ALJ erred in failing to give appropriate weight to the opinions of his treating physician and psychiatrist, in improperly rejecting plaintiff's subjective complaints of pain, and in failing to rely on the opinion testimony of a vocational expert, and that plaintiff was disabled from his onset date as a matter of law.   The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained.  The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of his physical and mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

As noted above, plaintiff has filed a motion to remand this case.  He argues that the new evidence he has provided from Drs. Smith and Flurry (doc. 12-2) justify a remand and reconsideration.  Because those documents relate directly to those physicians' earlier records and opinions, and because, as will be shown below, they are inconsistent with the earlier records, the motion to remand should be denied.

1.    **Physician opinions**.

As the court is well aware, absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Stewart, supra; Lewis, supra.; Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). Generally, a treating physician's medical opinion is entitled to greater weight than the opinion of a consulting physician. *Wilson v. Heckler*, 734 F.2d 513, 516 (11th Cir. 1984). In *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986), the Eleventh Circuit ruled:

> The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error. . . . Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true.

786 F.2d at 1053. The opinion of a nonexamining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician. *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985). However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability. *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). *Compare, Wilson v. Heckler, supra*.

a.    **Dr. Iserman**.

Plaintiff contends that the limitations stated in Dr. Iserman's supplemental questionnaire report of August 23, 2003 mandates a finding of disabled. The supplemental questionnaire asked the psychiatrist to rate the plaintiff's mental restrictions in certain areas. He opined that plaintiff's restrictions were *moderate* in social functioning and in episodes of deterioration or decompensation in work or

work related settings which cause withdrawal from the situation or to experience exacerbation of signs and symptoms.  He opined that plaintiff's restrictions were *slight* in activities of daily living.  He further opined that plaintiff would *often* have deficiencies of concentration, persistence or pace, resulting in failure to complete tasks in a timely manner (Tr. 250).  Dr. Iserman was then asked to evaluate plaintiff's limitations in a routine work setting.  He opined that plaintiff's limitations were *moderate* in responding to supervision, in responding to co-workers, and in performing repetitive tasks.  He opined that plaintiff's limitations were *mild* in understanding, carrying out and remembering instructions and in performing simple tasks.

The ALJ found that plaintiff could perform light work, with restrictions.  He noted that this conclusion was consistent with Dr. Iserman's assessment of non-exertional restrictions (Tr. 22).  There was substantial record evidence to support this finding.  The vocational expert testified that plaintiff could perform a broad range of light and sedentary work, and that the moderate restrictions placed by Dr. Iserman did not erode the employment base (Tr. 357-360).  If plaintiff *often* had deficiencies in concentration, persistence or pace, he would be unable to do a production line job, but would not otherwise be restricted (Tr. 359).  Thus, Dr. Iserman's restrictions are not so great as to preclude employability.

    b.    Dr. Smith.

Plaintiff next contends that the ALJ erred in rejecting Dr. Smith's opinion that plaintiff was limited to sedentary work.  The ALJ rejected this finding, noting that it was inconsistent with Dr. Smith's earlier opinion that plaintiff could not work.  Dr. Smith consistently stated that plaintiff could work within the restrictions of the FCE, which was for medium work (Tr. 221, 222) so long as it did not involve restraining inmates.  After plaintiff's second surgery Dr. Smith stated that he no longer agreed that plaintiff could do *medium* work, and that he was not "capable of working at this

time."  (Tr. 215).  Then, when he filled out the state retirement system form in February 2004, he opined that plaintiff could do sedentary work (Tr. 255).  This was only two months after he had stated that plaintiff was unable to work (Tr. 248).  Plaintiff argues that these inconsistencies can be explained away, and that the ALJ should have asked Dr. Smith to clarify his answers, but that is not required.  Taking Dr. Smith's opinion as true, plaintiff could still do sedentary work.

The regulations provide that "[i]f someone can do light work, we determine that he or she can also do sedentary work."  20 C.F.R. § 404.1567(b).  Thus, even if the ALJ erred in finding that plaintiff could do light work, his included finding that plaintiff could do sedentary work was endorsed by Dr. Smith.  The vocational expert testified that there were a significant number of both light and "probably almost all sedentary" jobs in the economy that plaintiff could perform (Tr. 355, 365-367).  It is undisputed, therefore, that even under plaintiff's reading of the record, plaintiff could do sedentary work, and was therefore not disabled.

Moreover, Dr. Smith's opinion that plaintiff could not work is not binding on the Commissioner.  The opinion by a treating physician that a patient is "unable to work" or is "disabled" is not dispositive for purposes of Social Security claims.  The Commissioner's regulations and the interpretations of those regulations clearly provide that an ALJ should give weight to a physician's opinions concerning the nature and severity of a claimant's impairments, but that the ultimate question of whether there is disability or inability to work is reserved to the Commissioner.  For instance, Title 20 C.F.R. § 404.1527(e)(1) specifically states that a finding of disability or inability to work by a medical source does not mean that the Commissioner will automatically reach the same conclusion.  See also Title 20 C.F.R. § 416.927(e).  Furthermore, the Commissioner "will not give any special significance to the source" of an opinion on issues reserved for the Commissioner.  Title 20 C.F.R. § 404.1527(e)(3) and § 416.927(e)(3);  *see also* Social Security Ruling 96-5p (whether

an individual is disabled is a question reserved to the Commissioner; treating source opinions on such questions are "never entitled to controlling weight or special significance").  Although such opinions on disability are not entitled to controlling weight, they must not be ignored, and the Commissioner must examine the entire record to determine whether such opinions are supported by the record. SSR 96-5p.  In *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) the court reversed the ALJ's finding of no disability, in part because the ALJ relied on a treating physician's report that the claimant could no longer work as a longshoreman when this report was ambiguous as to whether the claimant could do *any* work, and the physician subsequently wrote a letter saying the claimant was completely disabled.

        To require the Commissioner to accept as controlling a statement that a patient is or is not disabled would require the Commissioner to credit the physician not only with knowledge of the patient's physical condition, but also with an understanding of the nuances of how the regulations analyze physical limitations with respect to job experience, age, education, transferability of skills, the definitions of the various levels of exertion relevant to types of work, and similar matters.  Moreover, a physician's opinion on whether a person is able to work may be colored by such things as the physician's knowledge of local hiring practices, whether there are specific job vacancies, a person's reluctance to do a particular kind of work, and similar matters.  These things are not properly considered by the Commissioner in determining disability.  Title 20 C.F.R. §§ 404.1566, 416.966.  For all these reasons, a physician's opinion that his or her patient cannot work or is disabled is not a conclusive medical opinion for the purpose of Social Security benefits determinations and by itself is not entitled to special significance.

        2.      Plaintiff's subjective complaints of pain.

        Plaintiff next contends that the ALJ erred in rejecting plaintiff's subjective

complaints of pain.  As this court is well aware, pain is treated by the Regulations as a symptom of disability.   Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone,  ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms."  *Accord* 20 C.F.R. § 416.929. In *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following additional pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the *Hand* test.  *Wilson v. Barnhart*, 284 F.3d 1219 (11th Cir. 2002); Kelley *v. Apfel,* 173 F.3d 814 (11th Cir. 1999); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Martin v. Railroad Retirement Bd.,* 935 F.2d 230, 233 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard."  *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself."  *Elam*, 921 F.2d at 1216. The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence."  *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir.

1992) (citing *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987)).  However, the absence of evidence to support symptoms of the severity claimed is a factor that can be considered.  *Id.*; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, "[i]f the Commissioner refuses to credit [subjective testimony of the Plaintiff concerning pain] he must do so explicitly and give reasons for that decision. . . .  Where he fails to do so we hold as a matter of law that he has accepted that testimony as true."  *MacGregor v. Bowen*, 786 F.2d at 1054; *Holt v. Sullivan*, 921 F.2d at 1223.   The reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence.  *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991).

The ALJ found that plaintiff's testimony concerning his limitations was not totally credible (Tr. 24).  He noted that plaintiff admitted that he applied for and received unemployment benefits after he was terminated by the state.  That required him to state that he was able to work and was available for work.  Fla. Stat. § 443.091(1)(c).  Plaintiff also testified that there were other jobs he could do if they were available (Tr. 324, 329).  The ALJ also noted that plaintiff's daily activities did not show him to be wholly disabled.  It is true that daily activities of the routine sort are not alone enough to deny benefits, *Walker v. Bowen, supra*, but the ALJ relied on these activities in conjunction with plaintiff's admissions concerning his ability to do other jobs and his receiving unemployment benefits.  There was substantial record evidence to support the ALJ's finding.

3.  <u>Testimony of vocational expert.</u>

Finally, plaintiff argues that the ALJ did not include non-exertional psychiatric limitations in his hypothetical questions to the vocational expert.  A hypothetical question must comprehensively describe the plaintiff's condition, and vocational expert testimony that does not accurately address that condition cannot be considered substantial record evidence.  *Pendley v. Heckler,* 767 F.2d 1561, 1563

(11th Cir. 1985).   Plaintiff is incorrect.   The ALJ specifically referred to the non-exertional limitations in Dr. Iserman's report (Tr. 354), and those limitations were discussed extensively (Tr. 354-366).   The ALJ also included all limitations which he ultimately found to exist.   Consequently, the hypothetical was complete.

Plaintiff has failed to carry his burden of showing that the ALJ's decision was not supported by substantial record evidence and must be reversed.   As discussed above, the medical record supported a finding that plaintiff could do light or sedentary work, and he is not entitled to reversal

## MOTION FOR REMAND

After this case had been briefed, plaintiff filed a motion for remand (doc. 12), to which respondent has replied (doc. 13).   The basis of his motion is the new evidence from Dr. Smith and Dr. Flurry (doc, 12-2).   Both now opine that plaintiff is unable to work.   Since these reports relate back to the period at issue, plaintiff says the case should be remanded for further consideration.   Respondent says this is new evidence that was not before the ALJ and is irrelevant to this appeal.

"When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision is also subject to judicial review because it amounts to an error of law.   20 C.F.R. §§ 404.970(b), 416.1470(b) . . . .   When the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Secretary.   20 C.F.R. § 404.955."   *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).   Thus, "new evidence first submitted to the Appeals Council is part of the administrative record that goes to the district court for review when the Appeals Council accepts the case for review as well as when the Council denies review."   21 F.3d at 1067.   "To review the Appeals Council's denial of review, courts will have to look at the pertinent evidence to determine if the evidence is new and material, the kind of evidence the Appeals Counsel must

consider in making its decision whether to review an ALJ's decision. *See* 20 C.F.R. S 404.970(b) ( "Appeals Council *shall* evaluate the entire record including the new and material evidence submitted to it if it relates to the period on or before the date of the administrative law judge hearing decision.")." *Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998).  That does not mean, however, that a reviewing court can consider the new evidence in determining whether the Commissioner's decision was supported by substantial record evidence.  For that purpose, the court may look only to the evidence that was before the ALJ at the time he made his decision.  *Id.*

Of course, this evidence was not presented to the Appeals Council, because it did not exist until the case was already pending in this court.  Nevertheless, the standard is the same.  A remand for consideration of new evidence pursuant to sentence six of 42 U.S.C. § 405(g)[1] is warranted *if* the claimant shows "that (1) new, noncumulative evidence exists, (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level." *Falge*, 150 F.3d at 1323; *Keeton*, 21 F.3d at 1067; *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986), citing *Cherry v. Heckler*, 760 F.2d 1186 (11th Cir. 1985).[2]  To be material, the new evidence must relate back to the original alleged onset date of disability, or at least must relate to the disabilities litigated administratively.  *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988).[3]

---

[1] Remand may occur pursuant to either sentence four or sentence six of 42 U.S.C. § 405(g). *Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).  A sentence six remand can occur on the motion of the Secretary before she files her answer for good cause, or, alternatively, upon a showing that there is new material evidence and good cause for the failure to incorporate such evidence into the record.

[2] The Supreme Court has noted a conflict among the circuits as to the judicial standard of review as to this issue. *Sullivan v. Finkelstein*, 496 U.S. 617, 110 S.Ct. 2658, 2664 n. 6, 110 L.Ed.2d 563 (1990).  This court must follow the standard set by *Caulder*, 791 F.2d at 875, which reiterated the ruling in *Cherry* that the court determines the materiality of new evidence for purposes of remand in a de novo proceeding as a matter of law.

[3] Stated another way, the new evidence must be relevant to a condition existing on or before the ALJ's decision, *Thomas v. Sullivan*, 928 F.2d 255, 260-261 (8th Cir. 1991), or at least before the final decision of the Appeals Council.  See *Smith v. Bowen*, 792 F.2d 1547, 1551 (11th Cir. 1986) (Appeals Council may consider new

Good cause may be shown, for example, where the evidence did not exist at the time of the administrative decision.  *Cherry v. Heckler*, 760 F.2d at 1192.  Therefore, if the court finds that the evidence was noncumulative and material and that good cause has been shown, remand to the Commissioner under sentence six of 42 U.S.C. § 405(g) is appropriate.

The reports in question relate to the relevant period, but good cause has not been shown for not producing them sooner.  The reason they were not produced sooner is that they directly conflict with what was originally produced.  Specifically, Dr. Smith's report of February 12, 2004 informed the Florida Retirement System that plaintiff had last been seen on December 5, 2003, that he had reached maximum medical improvement on May 6, 2002, and that he could perform sedentary work (Tr. 255).  His report of August 18, 2005 informed the state that plaintiff had last been seen on August 18, 2005, that he had reached maximum medical improvement on August 18, 2005, and that he was unable to work in any capacity.  That difference might be explained by a worsening in plaintiff's condition between February 2004 and August 2005 (which would place it outside the relevant period), but such a worsening is not supported by the medical record.  Moreover, also on August 18, 2005 Dr. Smith signed a letter "To whom it may concern," representing that "Mr. Puryear was permanently disabled *at the time of his separation from his job* [on] 8/26/02."  (Doc. 12-2) (emphasis added).  This conflicts with Dr. Smith's earlier opinion that plaintiff could do sedentary work as of February 12, 2004 (Tr. 255).  Therefore, even if there were some cause for the reports' late production, the new evidence would not likely change the outcome of the case because the opinions stated in them directly conflict with earlier opinions relative to the same facts.

The new reports from Dr. Flurry are somewhat different in that there is no prior report to which they can be compared.  They can be compared to the medical record,

_____

evidence.).

*Case No: 3:05cv81/RV/MD*

however, and the conclusion is inescapable.  Dr. Flurry was plaintiff's general physician, who treated him for various medical conditions over the years, but once he referred plaintiff to Dr. Smith in July 1995, Dr. Flurry's notes make no mention whatsoever of plaintiff's shoulder problems.[4]  Dr. Flurry is therefore not a treating physician for those conditions.  As such, his opinion is entitled to little weight, and his reports would not likely change the outcome of the case.

Plaintiff has failed to show that the new evidence is material such that a reasonable possibility exists that it would change the administrative result.  His motion for remand should therefore be denied.


Accordingly, it is respectfully RECOMMENDED:

1.    That plaintiff's motion for remand (doc. 12) be DENIED, and

2.    That the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.


At Pensacola, Florida this 3rd day of January, 2006.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

---

[4]  Dr. Flurry treated plaintiff for a rash on his hand (Tr. 137), hypertension (Tr. 134-137), bronchitis (Tr. 135-136), a rash (Tr. 135), exercise induced asthma (Tr. 134), abdominal pain and stress anxiety (Tr. 134), possible prostatitis and low back pain (Tr. 133), possible alcohol dependency (Tr. 132), and a headache with arm numbness, which resolved (Tr. 131-132).

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).**